IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 2 1 2017

CLERK, U.S. DISTRICT COURT
By_____
Deputy

CHARLES ALFRED JACKSON, §
§
        Petitioner, §
§
v. § No. 4:16-CV-128-A
§
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
        Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254 filed by petitioner, Charles Alfred Jackson, a
state prisoner incarcerated in the Correctional Institutions
Division of the Texas Department of Criminal Justice (TDCJ),
against Lorie Davis, director of TDCJ, respondent. After having
considered the pleadings, state court records, and relief sought
by petitioner, the court has concluded that the petition should
be denied.

### I. Procedural History

In September 2001 petitioner was indicted in Tarrant County,
Texas, Case No. 0810273D, for aggravated sexual assault of a
child younger than 14 years of age (count one) and indecency with

a child (count two). (Clerk's R. at 3) Petitioner's jury trial commenced on May 1, 2002, at the conclusion of which the jury found petitioner guilty on both counts and assessed his punishment at 60 years' confinement on count one and 20 years' confinement on count two. (*Id.* at 85.) On March 20, 2003, the Second District Court of Appeals of Texas affirmed the trial court's judgment. (Mem. Op. at 3.) Over ten years later, petitioner was granted permission to file an out-of-time petition for discretionary review, which was refused by the Texas Court of Criminal Appeals on March 19, 2014. (Docket Sheet at 1.) Petitioner also filed a postconviction state habeas-corpus application challenging his convictions, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court.

In a relatively short trial, A.W., the daughter of petitioner's common law wife, testified that when she was in the second grade, petitioner, who she considered her dad, was sitting on the couch and made her sit on top of him so their "private parts" were touching through their clothes and "grind on him." (Reporter's R., vol. 3, at 12-14.) A.W. testified that this happened more than once when her mother was at work. (*Id.* at 16.) A.W. also testified that on one occasion when she was in the

2

third grade and her mother was at the store, petitioner made her put her mouth on his "private part." (*Id.* at 19.) According to A.W., petitioner put on a pornographic movie showing a woman performing oral sex on a man and took down his pants while sitting on the couch. His private part was "sticking up" and "had hair on it" and he put it inside her mouth. (*Id.* at 20-21.) A.W. demonstrated the acts with anatomically-correct dolls. After each instance, petitioner told her not to tell anybody because he would go to jail. (*Id.* at 15, 20-22.) A.W. and her mother continued to live with petitioner for another two years before A.W. made her outcry. (*Id.* at 29.) Her mother testified that A.W. told her that on one occasion petitioner made her "suck his penis" as depicted in a pornographic movie and on several occasions he made her "grind on top of him." (*Id.* at 35-36.) A.W. and her mother moved out the same night of A.W.'s outcry and reported the abuse to the police. (*Id.* at 51.) The state's expert witness, Areceli Desmaris, a sexual assault nurse examiner (SANE), also testified from her SANE report that A.W. described petitioner "putting his penis in her mouth and making her suck on it," "touching her buttocks," and "making her masturbate him."[1]

---

[1]There are several different spellings of Areceli Desmaris's first name in the record. Unless used in a quotation, the court uses the spelling of her first name as stated in the reporter's record.

(*Id.*, vol. 2, at 19.)

Petitioner denied the allegations and testified that A.W.'s mother believed that he was seeing another woman, Carol Ziglar, and was thinking of leaving her and that the allegations were fabricated as an act of revenge. (*Id.*, vol. 3., at 92, 95.) Ziglar and one of petitioner's sisters testified and confirmed petitioner's version of events. (*Id.* at 66-67, 78-82.) Another sister testified that petitioner and A.W. had a good relationship and that she did not believe the allegations. (*Id.* at 65, 68, 70, 75.)

## II. Issues

Petitioner raises ten grounds for relief claiming ineffective assistance of counsel. The claims are multifarious and addressed below as thoroughly as practicable.

## III. Rule 5 Statement

Respondent does not believe that the petition is time-barred or subject to the successive-petition bar or that petitioner has failed to exhaust his claims in state court. (Resp't's Answer at 6.) 28 U.S.C. §§ 2244(b), (d) & 2254(b).

## IV. Discussion

### A. *Legal Standard for Granting Habeas Corpus Relief*

A § 2254 habeas petition is governed by the heightened

4

standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court's adjudication of a claim resulted in a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or resulted in a decision that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Further, when the Texas Court of Criminal

Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law, as determined by the Supreme Court of the United States," unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams,* 568 U.S. 289, 298 (2013); *Harrington,* 562 U.S. at 99; *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th Cir. 2003).

### B. Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's

conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The Supreme Court emphasized in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective-assistance-of-counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams,* 529 U.S. at 410)).
Accordingly, it is necessary only to determine whether the state courts' rejection of petitioner's ineffective-assistance claims was contrary to or an objectively unreasonable application of *Strickland. Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson*

7

*v. Dretke*, 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle*, 343 F.3d at 443.

Petitioner was represented at trial by lead counsel Richard C. Kline, and Ernest W. Rothfelder assisted. Petitioner was represented on appeal by Donald S. Gandy. Petitioner raised his ineffective-assistance claims in his state habeas application, and the state habeas court conducted a hearing by affidavit. All three counsel submitted affidavits, which the state court found credible and supported by the record. (02State Habeas R. at 255, 257.) The court subsequently adopted the state's proposed findings of fact and conclusions of law, with one modification. (02State Habeas R. at 289.) The Texas Court of Criminal Appeals, in turn, denied habeas relief based on those findings. Petitioner has not presented clear and convincing evidence refuting the presumption of correctness of those findings; thus, the court relies on the presumptive correctness of the state courts' factual findings in considering petitioner's claims. Applying the appropriate deference, and having independently reviewed petitioner's claims in conjunction with the state court records, the state courts' adjudication of the claims is not contrary to or an unreasonable application of *Strickland*.

Under his first ground, petitioner asserts that his trial

counsel was ineffective by failing to object to the trial court's improper communication with the jury during deliberations in the guilt/innocence phase of his trial. (Pet. at 6; Pet'r's Mem. at 5-10.) Specifically, he asserts the trial court's written response to jury note #1 failed to comply with the requirements of article 36.27 of the Texas Code of Criminal Procedure because the court's response was not read in open court in his presence. (Clerk's R. at 74-75.) *See* TEX. CODE CRIM. P. art. 36.27 (West 2006). Kline explained in his affidavit that he "did not object to the Court's written communication with the jury, because the Court gave us the opportunity to examine the note, and the Court's response to the jury was proper." (02State Habeas R. at 185.) Although the reporter's record does not encompass any transcription of events between the time the jury was sent to deliberate and the jury's reaching a verdict, the state habeas court entered factual findings consistent with counsel's explanation. (*Id.* at 252.) Based on its findings, and applying the *Strickland* standard, the court concluded that counsel's decision not to object was the result of reasonable trial strategy.[2] (*Id.* at 260.) The state court's decision was a

---

[2]The court further concluded that petitioner had failed to satisfy *Strickland*'s prejudice prong by showing that there was a reasonable probability that the result of his trial would have been different had counsel

reasonable application of *Strickland*. Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for habeas-corpus relief on the grounds of ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009); *Strickland*, 460 U.S. at 689. Furthermore, the state habeas court impliedly found that the trial court complied with the requirements of article 36.27. Counsel is not required to make frivolous objections as part of his "sound trial strategy." *Strickland*, 466 U.S. at 689; *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1988).

Under his second ground, petitioner claims counsel was ineffective by failing to lodge a running objection to improperly admitted hearsay evidence. (Pet. at 6; Pet'r's Mem. at 11-13.) Specifically, he asserts counsel should have lodged a running objection to the SANE nurse reading the statements given her by A.W. from the SANE report. (Reporter's R., vol. 2, at 17-18.) Kline responded to the allegation as follows:

---

objected to the trial court's response to the jury note. (*Id.* at 252, 255, 260-62.) It is not necessary to address both prongs of the test if the petitioner makes an insufficient showing on one. *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998). Therefore, because this court finds that petitioner has not satisfied the first prong of the *Strickland* test with regard to any of his ineffective-assistance claims, it is unnecessary in this opinion for the court to address the state courts' findings and legal conclusions as to the prejudice prong.

I lodged a hearsay objection to her testimony regarding
what the child said during examination which was
overruled, the Court then determined the testimony was
non-responsive, and sustained the objection. I objected
to further testimony, which was sustained. I did not
object to testimony regarding what was said by A.W. in
the course of the medical examination, pursuant to Rule
803(4) Texas Rules of Evidence.

(02State Habeas R. at 184.) The state habeas court entered

findings consistent with counsel's explanation, and applying the

*Strickland* standard, concluded that counsel's decision to

repeatedly object instead of lodging a running objection to the

testimony was the result of reasonable trial strategy. (*Id.* at

249-50, 259.) The state court's decision is a reasonable

application of *Strickland*. Under Texas evidentiary rules, hearsay

testimony of a sexual assault nurse examiner regarding statements

of a child victim describing the abuse are admissible under the

hearsay exception for statements made for the purpose of medical

treatment or diagnosis. *See* TEX. R. EVID. 803(4). Counsel is not

required to make frivolous objections as part of his "sound trial

strategy." *Strickland,* 466 U.S. at 689; *Green,* 160 F.3d at 1037.

Under his third ground, petitioner claims counsel was

ineffective by failing to object to acts of prosecutorial

misconduct. Specifically, he complains of the prosecution's

closing argument during the guilt/innocence phase bolstering the

reliability of the expert witness's finding of sexual abuse and the credibility of the victim and making reference to petitioner as a pedophile. (Pet. at 7; Pet'r's Mem. at 14-16.) Petitioner directs the court to the following argument:

> Now is the time to decide what's believable. Early this morning I put on [A.W.], *very credible little girl* who came up on this witness stand and told you what that man did to her. . . .

> . . .

> Was she so sure about every fact? No. If it was something she didn't recall, she told you I don't' remember that. Because if she was coached, by golly, we would have her in here telling you every detail verbatim, this, that, and the other. But that's not the case. *That's what makes her testimony so credible.*

> . . .

> But you've got to look at [A.W.] and you got to look at what [A.W.]'s teacher told you. *She's a very truthful girl, very truthful,* very quiet. . . .

> And Areceli Desmaris told you that in her seven years of experience and based upon her conversation with [A.W.'s mother] and with [A.W.] separately and based upon all of her experience, that she made a finding that sexual abuse had occurred to [A.W.]. And *you can rely on that.* We didn't just bring you [A.W.] to rely on.

> You know, *what does a pedophile look like? That's what a pedophile looks like. He's a pedophile.* . . .

(Reporter's R., vol. 3, at 112-13, 128-29 (emphasis added).)

Rothfelder responded in his affidavit that he did not object

12

because the state's argument was not improper. (02State Habeas R. at 196-97.) Based on counsel's affidavit and the documentary record of the trial proceedings, the state habeas court entered the following relevant factual findings:

37. The entire thrust of the defense was that Applicant made up the offense with coaching by her mother.

38. Due to the chosen defense, the victim's credibility and her reputation for truthfulness was at issue.

39. During closing arguments, defense counsel attacked the credibility of the victim, her mother, and the allegations.

40. The State's vouching for the credibility of the victim was a reasonable deduction from the evidence.

41. The victim's teacher testified that the victim had a reputation for being truthful.

42. The State's comment that the victim's teacher states she was "very truthful" was a summation of the evidence.

43. The State's vouching for the credibility of . . . Araceli Desmaris was a reasonable deduction from the evidence.

44. The State argued that Applicant was a pedophile.

45. The State's argument that Applicant was a pedophile was a summation of the evidence and a plea for law enforcement.

46. Hon. Kline objected to the State's closing argument that she was mischaracterizing the

13

testimony.

47. Hon. Rothfelder did not object to the prosecutor's arguments because he concluded they were not improper.

(*Id.* at 250-51.)

Under state law, proper areas of jury argument include: (1) summation of the evidence; (2) any reasonable deduction from the evidence; (3) answers to opposing counsel's arguments; and (4) pleas for law enforcement. (02State Habeas R. at 260.) Thus, a prosecutor may argue his opinions concerning issues so long as the opinions are based on the evidence in the record and not as constituting unsworn testimony. (*Id.*) Additionally, jury argument that vouches for the credibility of a witness is proper if it involves a reasonable deduction from the evidence. (*Id.*) The state court concluded that the state's jury arguments regarding the credibility of the witnesses were reasonable deductions from the evidence and that the prosecution's reference to petitioner as a pedophile was proper as summation of the evidence and a plea for law enforcement. (*Id.*) Based on its findings, and applying the *Strickland* standard, the court concluded that counsel's decisions not to object, or object more, to the complained-of jury argument was the result of reasonable trial strategy. (*Id.* at 260.) The state court's decision is a reasonable application

14

of *Strickland*. Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for habeas-corpus relief on the grounds of ineffective assistance of counsel. *Knowles,* 556 U.S. at 124; *Strickland,* 460 U.S. at 689. Counsel is not required to make frivolous objections as part of his "sound trial strategy." *Strickland,* 466 U.S. at 689; *Green,* 160 F.3d at 1037. Counsel is not ineffective by failing to object to proper jury argument. *Lauti v. Johnson,* 102 F.3d 166, 170 (5th Cir. 1996).

Under his fourth ground, petitioner claims trial counsel was ineffective by failing to object to the prosecution's jury argument during the punishment phase. (Pet. at 7; Pet'r's Mem. at 17-18.) The defense argued at punishment that petitioner should get probation. (02State Habeas R. at 252.) The prosecution responded as follows:

> Folks, April did a very courageous thing. She's a bright and courageous little girl. The Fort Worth police, they followed up on that, and they did their job. Lesa and I brought this case to you, and now it is up to you. Justice is in your hands. If you sat at home and thought why don't they do something about child molesters, get him off the street. This is your chance to do something. Justice demands it. Send him to prison for no less than 60 years on the aggravated sexual assault case and no less than 20 years on the indecency case. Justice is waiting.

(Reporter's R., vol. 4, at 71-72.) According to petitioner, the

15

argument improperly induced the jury to reach a particular verdict based upon the expectations or demands of the community. *See Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984).

Rothfelder responded to the allegation in his affidavit as follows (any errors in punctuation are in the original):

> I did not think the argument was improper. The prosecutors asked for "Justice" and to "take him off the street". They did not give an improper argument regarding community expectations, so the argument was not improper.

(02State Habeas R. at 197.)

State law prohibits jury argument designed to induce the jury to convict the defendant or assess him a particular punishment based on a public or community sentiment is improper, *See Motley v. State*, 773 S.W.2d 283, 293 (Tex. Crim. App. 1989). The state habeas court found that the state's argument that petitioner deserved a particular sentence was acceptable as a plea for law enforcement and an answer to argument of opposing counsel for probation and, thus, fell within the parameters of acceptable jury argument. (*Id.* at 252.) Applying *Strickland,* the court concluded that counsel's decision not to object was the result of reasonable trial strategy. (*Id.* at 260.) The state court's decision is a reasonable application of *Strickland.* Counsel is not required to make frivolous objections as part of

16

his "sound trial strategy." *Strickland*, 466 U.S. at 689; *Green*, 160 F.3d at 1037. Counsel is not ineffective by failing to object to proper jury argument. *Lauti*, 102 F.3d at 170.

Under his sixth ground, petitioner's claims are multifarious: he claims trial counsel was ineffective during the punishment phase of his trial by-

    (1)   failing to object to his probation officer's testimony "giving expert opinion" and to state's exhibits 4 ("Conditions of Bond") and 5 ("Narrative Listing");

    (2)   failing to object to A.W.'s mother's testimony regarding his drug problems and buying cocaine;

    (3)   eliciting improper testimony from A.W.'s mother regarding the victim's behavioral problems;

    (4)   failing to offer any mitigating evidence at punishment; and

    (5)   eliciting improper testimony from the defense witnesses Darshell Williams and Michelle Collins.

(Pet. at A-1.)

As to the first claim, petitioner asserts counsel should have objected to the testimony of Candace Latham, his probation officer while he was on pretrial bond, "giving expert opinion on applicant not being suitable as [a] church usher due to involvement with children" and to admission of state's exhibits 4, his "Conditions of Bond," and 5, Latham's "Narrative Listing."

(Pet. at A-1; 02State Habeas R. at 89-93.) Kline responded as
follows:

> Applicant mischaracterizes Ms. Latham's testimony.
> Candace Latham testified that because Applicant's bond
> conditions prohibited him from having contact with
> children, she did not think it would be in Applicant's
> best interest to usher at church, because he might have
> incidental contact with a child, which could result in
> his bond being revoked. I did not and do not now see
> how Ms. Latham's testimony regarding what was in
> Applicant's best interest is harmful to Applicant.

(02State Habeas R. at 185.) Counsel further explained that he did

not object to the admission of state's exhibits 4 and 5 because

the evidence was admissible under article 37.07 of the Texas Code

of Criminal Procedure. (*Id.* at 185.) *See* TEX. CODE CRIM. PROC. ANN.

art. 37.07, § 3 (a)(1) (West Supp. 2014). The state habeas court

entered findings consistent with counsel's testimony and,

applying the *Strickland* standard, concluded that counsel's

decision not to object was the result of reasonable trial

strategy. (*Id.* at 260.) The state court's decision is a

reasonable application of *Strickland*. The conditions of

petitioner's pretrial bond and the fact that he violated those

conditions were relevant to his suitability for probation. Other

than his mischaracterization of Latham's testimony, petitioner

points to no basis for objection to the complained-of testimony

or state's exhibits 4 and 5. Bald assertions are not enough to

sustain a claim of ineffective assistance of counsel. *Sayre v. Anderson,* 238 F.3d 631, 635-36 (5th Cir. 2001).

As to his second claim, petitioner asserts counsel was ineffective by failing to object to A.W.'s mother's testimony that while they lived together, petitioner had a drug problem and was buying cocaine. (Pet. at A-1; 02State Habeas R. at 93-94.) Kline averred in his affidavit that he did not want to make a frivolous objection given that the complained-of testimony was admissible under Texas Code of Criminal Procedure article 37.07 and that the appropriate limiting instruction was given to the jury regarding extraneous-offense evidence. (02State Habeas R. at 186.) *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). The state habeas court entered findings consistent with counsel's affidavit and, applying the *Strickland* standard, concluded that counsel's decision not to object to the state's evidence was the result of reasonable trial strategy. (*Id.* at 252, 260.) The state court's decision is a reasonable application of *Strickland*. Counsel is not required to make frivolous objections as part of his "sound trial strategy." *Strickland,* 466 U.S. at 689; *Green,* 160 F.3d at 1037.

As to his third claim, petitioner asserts counsel was ineffective by eliciting improper testimony from A.W.'s mother

regarding A.W.'s behavioral problem after the sexual assault-specifically, that A.W. had "a little bit of a behavior problem awhile during when she was in third grade, but her grades were good." (Pet. at A-1; 02State Habeas R. at 94-97; Reporter's R., vol. 4, at 34.) Counsel explained that his "questioning was in an effort to mitigate damage by arguing that the child had not been traumatized." (02State Habeas R. at 186.) The state court entered findings consistent with counsel's affidavit, and applying the *Strickland* standard, concluded that counsel's decision to ask A.W.'s mother about A.W.'s well-being was the result of reasonable trial strategy. (*Id.* at 260.) The state court's decision is a reasonable application of *Strickland.* The questioning of witnesses and the presentation of evidence are inherently matters of trial strategy when such choices are the result of a "conscious and informed decision on trial tactics." *Cotton v. Cockrell,* 343 F.3d 746, 752 (5th Cir. 2003). Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for habeas-corpus relief on the grounds of ineffective assistance of counsel. *Knowles,* 556 U.S. at 124; *Strickland,* 460 U.S. at 689.

Similarly, as to his fifth claim, petitioner asserts counsel was ineffective by eliciting improper testimony from two of his

family members Darchele Williams and Michelle Collins. (Pet. at A-1; 02State Habeas R. at 97-98.) In his state habeas application, petitioner directed the court to their testimony that petitioner had a drug addiction and would not have committed such an offense unless he was under the influence of drugs. (02State Habeas R. at 97-98.) The state habeas court found that the testimony was proper punishment testimony and, applying *Strickland*, concluded that counsel's decision to present the testimony was the result of reasonable trial strategy. (*Id.* at 253.) The state court's decision is a reasonable application of *Strickland*. The questioning of witnesses and the presentation of evidence are inherently matters of trial strategy when such choices are the result of a "conscious and informed decision on trial tactics." *Cotton*, 343 F.3d at 752. Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for habeas-corpus relief on the grounds of ineffective assistance of counsel. *Knowles,* 556 U.S. at 124; *Strickland,* 460 U.S. at 689. Presenting evidence that a criminal defendant was acting under the influence of alcohol or drugs at the time of the offense is a common defense in mitigation of punishment. *See Demouchette v. State*, 520 S.W.2d 712, 714-15 (Tex. Crim. App. 1973).

Finally, as to his fourth claim, petitioner asserts counsel was ineffective by failing to offer any evidence in mitigation of punishment. (Pet. at A-1.) Specifically, he asserts counsel should have consulted an expert regarding the medications as well as the physical and mental effects of sickle cell anemia, from which he suffers, and drug addiction; interviewed or called his treating physician regarding sickle cell anemia; sought out and presented character evidence by contacting his employers, friends, and church members to "counterweight" the evidence of his bad character; use an expert to present a defense and assist in cross-examination of his pretrial probation officer Candace Latham; and investigated the victim's therapy notes to recognize any possible diversions from standard protocol of interviewing child sexual-assault victims. (*Id.* at 99.) Kline explained that he attempted to get mitigation evidence that the victim was not traumatized by petitioner when he asked the victim's mother about her well-being. (02State Habeas R. at 253.) As noted above, counsel also elicited testimony from two of petitioner's family members that petitioner had a drug problem and that, in their opinion, had to be under the influence of drugs when he committed the offense. (*Id.* at 253.) Counsel further stated:

I did not think it was necessary to produce expert

testimony regarding his medical condition. The lay
testimony adequately addressed the issue.

As stated we were hired within one month of trial. I
distinctly remember several conversations with
Applicant about how imperative it was that he provide
us with names of character witnesses. He eventually
provided us the name of his sister, and a former
girlfriend. My recollection was that he had a spotty
work history and employers were not an option.

I did not question the therapist regarding her notes
and whether she had deviated from standard procedures
because I did not want to give the witness the
opportunity to claim these were <u>objective</u> rather than
<u>subjective</u> conclusions.

(*Id.* at 186-87.)

The state habeas court entered findings consistent with
counsel's affidavit and, applying the *Strickland* test, concluded
that, absent evidence from other persons who were willing and
available to testify on petitioner's behalf, counsel's mitigation
evidence was the result of reasonable trial strategy. (*Id.* at
254, 261.) The state court's decision is a reasonable application
of *Strickland*. These claims are speculative and conclusory. Such
claims are insufficient to raise a cognizable claim of
ineffective assistance of counsel. *See Koch v. Puckett,* 907 F>2d
524, 530 (5th Cir. 1990); *Alexander v. McCotter,* 775 F.2d 595,
602 (5th Cir. 1985).

Under his seventh ground, petitioner claims counsel was

ineffective by failing to strike biased and disqualified jurors. (Pet. at A-2; 02State Habeas R. at 38-40.) Specifically, he asserts that juror Beile was biased against him because "she made statements that often times young children can be more honest than adults," and that juror Crabtree was biased against him because he "took a direct interest in the case" and wanted badly to serve on the jury. (Pet. at A-2.) He also asserts counsel failed to ask if any of the jurors had been the victim of a crime of sexual abuse. (*Id.*) Counsel responded to the allegations in his affidavit, in relevant part, as follows (any spelling, grammatical, and/or punctuation errors are in the original):

> Regarding my failure to strike biased and disqualified jurors Applicant singles out two jurors that he claims should have been challenged Ms. Beile and Mr. Crabtree. Applicant states that Ms. Beile showed bias against Applicant because she stated children are more honest than adults. This is a mischaracterization of her testimony. Mrs. Beile raised her hand in response to my question regarding whether children were more honest than adults. She said "each case is subjective . . . every case is individual when it comes to young children . . . oftentimes young children can be more honest . . . every case is subjective, every case is individual." I did not attempt to get her to change her perspective, I did inquire whether she thought older children may be more prone to assume adult biases. Again she responded that depends of their "own personal experience and background. I inquired whether the "environment that they [sic] child is in might influence their truthfulness or lack of truthfulness" She responded "Definitely" It was our defense at trial that the child

24

[A.W.] had been coerced by her mother to make false accusation against Applicant, because she was mad at Applicant for ending their romantic relationship. Mrs. Beile's willingness to view the testimony of a child witness individually and subjectively did not warrant a challenge for cause. Her response that the child's environment could "Definitely" influence a child's truthfulness was favorable to our defense that the child's mother had coerced her into making false allegations against the Applicant.

Regarding the juror Crabtree. He would not be disqualified under Government Code 602.105 for having served previously on a jury because he had not previously served on <u>the present case</u>. The previous case that he did serve on was different in fact (Capital Murder) His responses to my questioning did not show bias, but rather that he believed in the judicial system, and thought that it was a civic duty to serve. My belief is that jurors who believe in the system and want to do the right thing are better jurors than people resentful or reluctant to be on the jury.

(02State Habeas R. at 183-84 (record citations omitted).)

The state habeas court entered factual findings consistent with counsel's affidavit and found that, absent any evidence of bias or prejudice, counsel's decision not to strike the two jurors was the result of reasonable trial strategy. (*Id.* at 247-24.) Further, the court found no evidence that any of the jurors were disqualified, under state law, from serving. (*Id.* at 249.) The court further noted that counsel had asked the jury the following question:

Is there anyone here who feels that there is something in their life or personal experience that

> would not allow them, that would bias them in some way
> that would not allow them to sit on this jury in this
> kind of case? Because people may be great jurors in a
> sexual assault case or in a DWI, what have you. So is
> there anyone here that has any kind of personal bias or
> personal experience that would prevent them from
> rendering a fair verdict or from being impartial in
> this case? I gather from your silence that you do not.

(*Id.* at 249.) In response to the question, one potential juror

asked to approach the bench and advised that his brother had been

accused of molestation and that he may not be impartial based on

that experience. (*Id.*) The court found that counsel's questioning

was sufficient to ask the jury panel if any jurors were biased

based on their personal experiences. Applying the *Strickland*

standard, the court concluded that petitioner had failed to prove

that counsel failed to properly question and strike biased and

disqualified jurors. (*Id.* at 259.) The state courts' decision is

a reasonable application of *Strickland*. The record refutes the

factual premises underlying the claims. Additionally, the bias

determination centers on a juror's own indication that he has

"such fixed opinions" that he cannot impartially judge guilt and

whether his views would prevent or substantially impair the

performance of his duties as a juror in accordance with his or

her instructions and oath. *See Patton v. Yount,* 467 U.S. 1025,

1035 (1984); *United States v. Scott,* 159 F.3d 916, 925-26 (5th

Cir. 1998). Jurors Beile and Crabtree did not express an actual bias against petitioner; there is no evidence that any juror was disqualified; and, counsel's question to the venire regarding "this kind of case" was sufficient to root out bias based on their experience as victims of the same or similar crimes.

Under his eighth ground, petitioner claims trial counsel was ineffective by failing to request a limiting instruction to evidence of extraneous acts during the guilt/innocence phase that he made the victim masturbate him and that there were repeated acts of grinding on the victim. (Pet. at A-2; 02State Habeas R. at 48-55.) Counsel responded in his affidavit that he did not request a limiting instruction regarding testimony of extraneous conduct as trial strategy because the testimony was contextual and he did not want to draw the jurors attention to it. (02State Habeas R. at 184.) The state habeas court entered findings consistent with counsel's affidavit and, applying the *Strickland* standard, concluded that counsel's decision was the result of reasonable trial strategy. (*Id.* at 250.) The state court's decision is a reasonable application of *Strickland*. Under state law, same transaction contextual evidence is admissible and no limiting instruction is required. *See Camacho v. State,* 864 S.W.2d 524, 532, 535 (Tex. Crim. App. 1993). Evidence that

petitioner made the victim masturbate him and that petitioner grinded the victim's genitals with his genitals was part of the same transactions and provided context. Moreover, under article 38.37, § 2 of the Texas Code of Criminal Procedure such extraneous evidence is often admissible in cases involving sexual assaults of children, notwithstanding Texas's normal rules of evidence. *See* TEX. CODE CRIM. P. art. 38.47 (West Supp. 2014). Because petitioner was not entitled to either a contemporaneous limiting instruction to the jury or any limiting instruction in jury charge with respect to this evidence, counsel was not ineffective in failing to request such an instruction.

Under his ninth ground, petitioner claims counsel was ineffective by failing to object to the impermissible bolstering by state witnesses regarding the victim's credibility. (Pet. at A-3; 02State Habeas R. at 56-60.) Specifically, petitioner asserts that counsel should have objected to the testimony of Debbie Heath, the victim's teacher, that the victim has a good reputation for being truthful. Counsel responded to the allegation as follows (all grammatical and/or punctuation errors are in the original):

> Applicant argues that I was ineffective for failing to object to the testimony of the child's teacher Debbie Heath, when asked if "[A.W.] had a

reputation for truthfulness" I did not object because
the entire trust of our defense, as related to us by
Applicant, was that [A.W.]'s mother was mad at him for
leaving her, and had sought revenge by having the child
make up the sexual assault. Accordingly, the child's
reputation for truthfulness was at issue. The State
asked the witness the question regarding the child's
reputation for truthfulness in accordance with the
rules of evidence and predicate of eliciting testimony
regarding character for truthfulness.

(02State Habeas R. at 184-85.)

Based on counsel's affidavit, the state habeas court found

that because the victim's credibility and reputation for

truthfulness were at issue, counsel's decision not to object to

Heath's testimony was the result of reasonable trial strategy.

(*Id.* at 250, 259.) The state's court's decision is a reasonable

application of *Strickland.* Under state evidentiary rules, non-

expert testimony may be offered to support the credibility of a

witness in the form of opinion or reputation, but "the evidence

may refer only to character for truthfulness or untruthfulness."

Tex. R. Evid. 608(a)(1). Thus, Heath's testimony was admissible.

Counsel is not required to make frivolous objections as part of

his "sound trial strategy." *Strickland,* 466 U.S. at 689; *Lauti,*

102 F.3d at 170.

Finally under his tenth ground, petitioner claims trial

counsel was ineffective by failing to object to the SANE nurse's

29

testimony bolstering the victim's credibility. Counsel elicited

the complained-of testimony on cross-examination by questioning

Desmaris as follows:

> Q. And your diagnosis was reached solely on the basis of the history given by the patient, correct?
> A. Yes.
> Q. In other words, there was no independent physical evidence to that fact, right?
> A. Right.
> Q. Al right. So you necessarily reached your diagnosis by taking the patient at her word, correct?
> A. Yes.
> Q. And other than the testimony from the mother you had no other corroborating information reaching this conclusion, correct?
> A. That' right.

(Reporter's R., vol. 2, at 29-30.)

> Counsel explained in his affidavit:

> My decision not to ask Ariceli Desmaris regarding the objective criteria she might have used in determining whether the child was telling the truth was I did not want to open the door to any testimony that there were any objective factors. Instead, I elicited testimony that Ms. Desmaris arrived at her conclusions based solely on the testimony of the child, without any objective basis.

(02State Habeas R. at 185.)

The state habeas court entered findings consistent with

counsel's affidavit and, applying the *Strickland* test, concluded

that counsel's decision not to object to Desmaris's testimony

regarding the diagnosis of the victim and to focus, instead, on

the subjective nature of the diagnosis was the result of reasonable trial strategy. (*Id.* at 251, 260.) Although, as a matter of state law, an expert witness may not offer a direct opinion on the truthfulness of a child complainant's allegations, the state court impliedly found that Desmaris's testimony was not a direct opinion that A.W. was truthful. (*Id.* at 260.) *See* TEX. R. EVID. 702. Deferring to the state courts' implicit finding, the state court's application of *Strickland* is reasonable.

Under his fifth ground, petitioner claims he received ineffective assistance of appellate counsel because counsel filed appellant's brief without a complete record before him, namely, without the voir-dire proceedings; raised only a single non-meritorious point of error that was not properly preserved by trial counsel; and failed to raise his ineffective-assistance-of-trial-counsel claims. Counsel raised a single point on appeal, contending that the trial court erred by admitting A.W.'s statement made to the SANE nurse, Arceceli Desmaris. (Mem. Op. at 1-2.) The appellate court held that the claim was not properly preserved at trial because trial counsel failed to object each time the complained-of testimony was offered. (*Id.* at 2-3.) Appellate counsel, Donald S. Gandy, responded to petitioner's allegations in an affidavit, stating:

I filed a Designation of Record during May of 2002. In such designation I requested a "complete statement of facts" to be prepared. I have no independent recollection of whether or not the voir-dire was included in such record, but I know I would have recognized that at the time and requested that the record be supplemented to include same. . . . My guess is, and this is only a guess, is that Petitioner has a copy of the Statement of Facts that I sent to Mr. [Ted] Potter [an attorney from Belton, Texas, who was asked by petitioner's family to review the case in order to give them an opinion on the likely success of an appeal]. In such Statement of Facts, I did not include a copy of the voir dire examination of the jury panel. From this I surmise that Petitioner has concluded that the Statement of Facts did not include a transcription of the voir dire.

. . .

Petitioner suggests that the Brief would have been more persuasive if more than one issue had been raised for appellate review. Suffice it to say that I raised the issue that, in my professional opinion was supported by the record. The Court of Appeals found that a running objection should have been requested, which I respectfully disagreed with.

. . .

Petitioner claims that I should have raised the issue of ineffective assistance of counsel on direct appeal. While a claim on ineffective assistance of counsel is not per-se barred for raising on direct appeal, it is not considered the preferred method of raising such issue for several reasons.

(02State Habeas R. at 274-80 (citations omitted).)

The state habeas court entered factual findings consistent with counsel's affidavit and, applying the *Strickland* standard,

concluded that counsel raised the one issue he believed was supported by the record and that counsel's decision on which issues to raise in appellant's brief was the result of reasonable trial strategy. (*Id.* at 255-57, 263-66.) The state court's decision is a reasonable application of *Strickland*. The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be raised on appeal. *See Jones v. Barnes,* 463 U.S. 745, 751 (1983). Here it appears that appellate counsel chose to raise the strongest point of error on appeal; that is a reasonable tactic. *See Ellis v. Lynaugh,* 873 F.2d 830, 840 (5th Cir. 1989). Nor has petitioner raised any issues that counsel failed to raise upon which he was likely to prevail on appeal. *Id.*

A petitioner shoulders a heavy burden to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner presents no evidentiary, factual, or legal basis in this federal habeas action that could lead the court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d). Petitioner is not entitled to relief.

33

For the reasons discussed herein,

The court ORDERS that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED September 26, 2017.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE